UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS M. SUELLENTROP, JR., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. 4:21 CV 684 CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Dennis M. Suellentrop, Jr.'s motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In September 2018, Suellentrop pleaded guilty to seven counts of producing child pornography and one count of possessing child pornography. Case No. 4:17 CR 435 CDP. I sentenced him to 120 years' imprisonment and lifetime supervised release. Suellentrop now argues that his counsel was ineffective during the plea and sentencing processes and that his sentence is unconstitutional. For the following reasons, I will deny Suellentrop's motion.

### Background

Suellentrop lived in a house in Arnold, Missouri, with his girlfriend, their infant daughter M.S., and two roommates. On January 1, 2017, one of these roommates discovered pornographic depictions of M.S. on Suellentrop's phone.

Law enforcement was notified and police arrived at the residence and arrested Suellentrop.  Later forensic examination of Suellentrop's phone unearthed 47 videos of Suellentrop sexually abusing M.S.—many of which dated from as early as August 2016, when M.S. was just two months old—as well as child pornography of other victims.

Suellentrop was charged with seven counts of Production of Child Pornography in violation of 18 U.S.C. § 2251(a), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  (Crim. ECF 1) On September 6, 2018, he pleaded guilty to all eight counts as part of an open, conditional plea agreement.[1]  The parties did not agree to any application of the United States Sentencing Guidelines, but the plea agreement set out in detail the government's proposed calculation, which resulted in a total offense level of 51. The agreement also explained that Suellentrop's offenses carried a sentence ranging from a mandatory minimum of 15 and a maximum of 230 years' imprisonment.  It stated that the Government intended to request the maximum possible sentence and defendant expected to request the minimum possible sentence.

---

[1] The agreement was "open" because the parties did not agree to a sentence; it was "conditional" because Suellentrop reserved the right to appeal my denial of his earlier motion to suppress evidence from his cell phone.  (ECF 59 at p. 2.)  He appealed the suppression decision and the Eighth Circuit affirmed.  *United States v. Suellentrop*, 953 F.3d 1047 (8th Cir. 2020).

At the change of plea hearing, Suellentrop agreed that he read the agreement and discussed it with his lawyer before signing (Crim. ECF 102 at p. 9:8-10), that everything in the agreement was true (*Id.* at p. 9:11-16), and that he was satisfied with his counsel's representation (*Id.* p. 5:15-18.)  I also confirmed that he understood that there was a mandatory minimum sentence of fifteen years in prison and a maximum of 230 years in prison (*Id.* at p. 19:4-15), that the Government planned to ask for the maximum sentence (*Id.* at p. 9:16-25), and that the sentencing guidelines would affect his sentence (*Id.* at pp. 19:16-20:22.)  At the conclusion of the hearing, I found that Suellentrop's plea was knowing and voluntary, and I accepted his guilty plea.

The United States Probation Office prepared a Presentence Investigation Report, which determined that Suellentrop's Sentencing Guidelines Combined Adjusted Offense Level was 51.  The Chapter Four enhancement raised that to 56 which, after acceptance of responsibility, results in an offense level of 53.  But because that offense level exceeds the maximum offense level under the guidelines, 43, the probation office treated his total offense level as 43.  *See* U.S. Sent'g Guidelines Manual Ch. 5, Pt. A, cmt. n. 2 ("An offense level of more than 43 is to be treated as an offense level of 43.")

At the sentencing hearing on December 18, 2018, Suellentrop stated that he went over the Presentence Report with his counsel and that there was nothing he

wanted his counsel to object to in the report.  (Crim. ECF 91 at p. 3:15-24.)  I therefore adopted it as my findings of fact and legal conclusions about the guidelines.  Suellentrop declined to offer a statement before I sentenced him, but his counsel suggested that the victim would not remember the events or suffer long-term damage because of her young age.  Counsel also submitted several letters from Suellentrop's family and friends testifying to his character.  At the conclusion of the hearing, I explained that "the guidelines call for life imprisonment, and I believe that life imprisonment is the appropriate sentence in the case."  (*Id.* at p. 17:6-8)  The statutory maximum for the offenses, if run consecutively, totaled 230 years, so a sentence of "life" imprisonment was not allowed under the statutes.  I therefore sentenced Suellentrop to an aggregate term of 120 years' imprisonment and supervised release for life.

After his direct appeal challenging the suppression issues was denied, Suellentrop filed this motion to vacate his sentence.  He does not dispute "the ugly conduct associated with the offense."  (ECF 2 at p. 5.)  Instead, he argues:

1. Counsel was ineffective in failing to advise Petitioner of the guidelines applicable to sentencing if he entered an open plea. Petitioner was not aware he would receive a life sentence under the guidelines and had he been, he would have chosen to proceed to trial.  Counsel failed to adequately investigate the guidelines and their application requirements.

2. Counsel was ineffective in recommending an open plea knowing the guidelines were so severe that a sentence of 15 years was not possible.

- 4 -

3. Counsel was ineffective for telling Petitioner that he could get as much as 40 years but could be released after serving 20 years.

4. Counsel was ineffective in failing to obtain an expert psychosexual evaluation of Petitioner.

5. Counsel was ineffective for failing to argue disparity as to similarly or worse situated offenders in child pornography production cases in violation of the statutory requirements pursuant to USC § 3553 factor (A)(6).

6. Counsel was ineffective in failing to argue that Petitioner should receive the credit for acceptance of responsibility from offense level 43 not 51 as the acceptance at this level was meaningless.  Counsel was ineffective for failing to argue this guideline problem could support a variance.

7. It is unconstitutional under the Fifth and Sixth amendment to not give meaningful credit to a defendant who enters a plea and accepts responsibility.

8. Failing to receive meaningful real time reduction of the sentencing guidelines credit for a plea with acceptance of responsibility is cruel and unusual punishment, deceptive and violates the intent of the guidelines purpose.  Such limitations under the guidelines also violates due process. In addition to the due process and 8th amendment argument, both trial and appellate counsel were ineffective for failing to raise these issues.

(ECF 2.)  He asks the Court to reverse his conviction and allow him withdraw his plea and proceed to trial.

## Discussion

At the guilty plea hearing, Suellentrop stated that he was satisfied with counsel's representation and that counsel did not refuse to do anything he asked. (Crim. ECF 102 at p. 5:15-18.)  Now, Suellentrop claims that his counsel's

performance was constitutionally deficient.  In Grounds 1 through 3, he challenges his counsel's assistance during the plea process; in Grounds 4 through 6, he challenges his counsel's assistance during sentencing.

To prevail on his claims, Suellentrop must satisfy the two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show that (1) his attorney's performance "fell below an objective standard of reasonableness," *Id.* at 688, and (2) his counsel's deficient performance prejudiced him, that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  For his claims challenging his counsel's assistance during the plea process, Suellentrop must show a "reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

1.  Ground 1

In Ground 1, Suellentrop argues that his counsel was ineffective because he failed to explain how the sentencing guidelines would apply.  Suellentrop claims that he "had no idea he would be sentenced to life in prison" and that he did not know the difference between his maximum statutory sentence and the sentencing guidelines.  (ECF 2 at p. 6.)

His claim fails because "a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences." *United States v. Granados*, 168 F.3d 343, 345 (8th Cir. 1999) (denying movant's claim that counsel was ineffective because he incorrectly advised him of the sentence he would receive under the guidelines, but granting relief on the claim that counsel was ineffective for failing to object to an incorrect drug quantity).  "So long as the district court tells a defendant the statutory range of punishment that he faces and informs him that the sentencing guidelines will be used in determining the ultimate sentence, the plea is binding." *United States v. Ramirez-Hernandez*, 449 F.3d 824, 827 (8th Cir. 2006) (rejecting argument that counsel led defendant to believe he would receive a sentence significantly below the guidelines range).

Here, Suellentrop's guilty plea agreement stated that he faced up to 230 years' imprisonment, and at the plea hearing, Suellentrop confirmed that he read and understood the agreement.  I specifically ensured he understood his potential sentence:

> [The Court:] . . . [I]t's possible that I could give you the—if they were all consecutive, it would add up to 230 years' imprisonment.  You understand that?
>
> [Suellentrop:] Yes, ma'am.
>
> [The Court:] And the minimum term would always be 15 years no matter what.  You understand that?
>
> [Suellentrop:] Yes, ma'am.

> [The Court:] So when you plead guilty, you're potentially—you understand what you're potentially subjecting yourself to by pleading guilty.
>
> [Suellentrop:] Yes, ma'am.

(ECF 102 at p. 19:5-15.)

I also explained how his sentence would be affected by the sentencing

guidelines:

> [The Court:] Okay. Now, the sentence is also going to be affected by the sentencing guidelines, and the guidelines are a set of rules that apply points for different things, and when we apply them to your case, we end up with a result called the sentencing guidelines range. That's the range of jail time that the guidelines are recommending for you. The guidelines also have departures, reasons I could give you a higher or a lower sentence, and we say the guidelines are an advisory system, meaning that the Court doesn't always have to follow the recommendations of the guidelines. I do have to figure out what the guidelines recommend and then determine whether you're eligible for any of the departures that are listed in the guidelines, and then I can consider other facts about you and the crime and the purposes of sentencing to help me come up with the correct sentence.

(*Id.* at pp. 19:16-20:5.)  And I explained that the government would ask for the

maximum possible sentence:

> [The Court:] Okay. It also says that you all do not have any agreements about the sentencing guidelines, but you are agreeing that either side can ask for a sentence above or below the sentencing range that's recommended by the guidelines, and then it goes on to say that the Government's intending to ask me to impose the maximum sentence, and you're expecting to ask me to impose the minimum possible sentence, which, in this case, is 15 years' imprisonment. Do you understand that's what is in this agreement?
>
> [Suellentrop:] Yes, ma'am.

- 8 -

(*Id.* at p 9:16-25.)  I clarified that I was not promising any particular sentence or application of the guidelines:

> [The Court:] And I -- until I read the Presentence Report, I won't know what your sentence is going to be, really, until I've heard from you and gone through the whole process. So I'm not   promising you any particular sentence or any particular guidelines. Do you understand that?
>
> [Suellentrop:] Yes, ma'am.

(*Id.* at pp. 20:23-21:3.)

Even after these clarifications, Suellentrop still decided to plead guilty. Because a "defendant is not constitutionally entitled to more advice than this[,]" his counsel was not ineffective and I will deny Ground 1.  *United States v. Davis*, 508 F.3d 461, 463 (8th Cir. 2007)

2.  Ground 2

In Ground 2, Suellentrop argues that his counsel was ineffective because he did not explain that his requested 15-year sentence was unrealistic.  Suellentrop notes that his total offense level was around 20 levels higher than the offense levels associated with a 15-year sentence, and he argues that his counsel had no strategy for closing that gap.

Because a defendant is not constitutionally entitled to be apprised of the sentencing options beyond the statutory range of punishment, counsel's alleged failure to tell Suellentrop the likelihood of receiving his requested sentence was not

deficient.  Moreover, counsel did try to persuade the Court to sentence Suellentrop to 15 years: he submitted letters from Suellentrop's friends and family to attest to his character and history, and he argued that M.S. was so young that she would not remember the abuse.  But even if counsel's performance was somehow defective, Suellentrop does not explain how this performance prejudiced him.  He does not even claim that he would not have pled guilty if his counsel told him that it was unlikely he would receive a 15-year sentence.  I will accordingly deny Ground 2.

      3.  Ground 3

In Ground 3, Suellentrop claims that his counsel erroneously told him that "he could get as much as 40 years but could be released after serving 20 years." (ECF 2 at p. 11.)  He claims that such an early release is not possible and that his counsel was not familiar with the federal justice system.[2]

"[E]rroneous advice concerning parole eligibility may constitute ineffective assistance of counsel."  *Hale v. Lockhart*, 903 F.2d 545, 549 (8th Cir. 1989).  But this erroneous advice must affect the defendant's decision to plead guilty.  *See Hill v. Lockhart*, 894 F.2d 1009, 1010 (8th Cir. 1990).  For example, in *Hill*, the Eighth

---

[2] To the extent Suellentrop claims that his counsel told him that the maximum sentence he could receive was 40 years, his claim fails because Suellentrop swore that he understood his maximum sentence was 230 years.  His argument that his counsel was not familiar with the federal justice system is simply wrong:  his counsel has handled well over one hundred criminal cases in this federal court alone.

Circuit concluded that counsel's erroneous parole eligibility advice was constitutionally deficient because the defendant "made clear that the timing of eligibility was the dispositive issue for him in accepting or rejecting a plea bargain." *Id.* By contrast, Suellentrop does not allege facts that would show that early release was a critical factor in his decision to plead guilty. Again, as with the claim in ground 2, he does not even argue that he would have gone to trial if his counsel had not given him this inaccurate advice. He has therefore failed to show that he was prejudiced by his counsel's failure. I will accordingly deny Ground 3.

4. Ground 4

In Ground 4, Suellentrop argues that his counsel was ineffective because he failed to obtain an expert psychosexual evaluation that would show that Suellentrop was not a threat to the community. This entirely speculative claim fails because Suellentrop does not identify an expert nor provide evidence of the testimony that the expert would have given at the sentencing hearing. *See Rodela-Aguilar v. United States*, 596 F.3d 457, 462 (8th Cir. 2010) ("A claim of ineffective assistance based on the failure to consult and call an expert requires 'evidence of what a scientific expert would have stated' at trial in order to establish *Strickland* prejudice.") (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)). He merely assumes that an expert would testify that he would not be a danger to others in the future. This argument is entirely speculative, and given the

- 11 -

serious nature of Suellentrop's conduct in this case, the credibility of any such testimony would have been questionable at best.  Suellentrop has failed to show that he was prejudiced by his counsel's alleged failure.  I will deny Ground 4.

> 5.  Ground 5

In Ground 5, Suellentrop argues that his counsel was ineffective because he did not argue that there was a disparity between Suellentrop's potential sentence and the sentences of similarly situated offenders.  He claims that "[t]here are many cases with more serious conduct than Petitioner[']s over longer periods of time that received far less than the constructive life sentence imposed in this case."  (ECF 2 at p. 13.)  Because his counsel failed to identify these sentences for the Court, Suellentrop claims I did not address their disparity with Suellentrop's sentence.

As an initial matter, I explicitly compared Suellentrop's sentence with other similarly situated defendants' sentences and explained that they were not unfairly disparate:

> Of course, there is a need to avoid unwarranted sentencing disparity, but when you have this kind of child abuse, there's nothing disparate about this kind of sentence. The vast majority of the child pornography cases that we see in federal court, of course, do not involve such serious and violent conduct, and certainly, we do have cases involving young, young children, but this is, you know, certainly, a serious one, and this also has the—as I said, the fact that it was repeated over months and had—had the videos not been discovered, I feel confident that it would have continued as the child got older and would have been able to remember these horrible events.

- 12 -

(Crim. ECF 91 at pp. 18:16-19:2)  Though Suellentrop cites several Fourth Circuit cases in which defendants received lesser sentences for child-pornography-related convictions, these cases involved substantially different conduct with much lower offense levels.  (*See* ECF 2 at p. 13.)  I am therefore unable to say that counsel was ineffective by failing to argue that the sentence recommended by the guidelines was unlike the sentences of similarly situated defendants, or that Suellentrop was prejudiced by this failure.

6.  Ground 6

In Grounds 6, Suellentrop claims that he did not receive meaningful credit for his acceptance of responsibility.  Under § 3E1.1 of the sentencing guidelines, a defendant that clearly demonstrates acceptance of responsibility for an offense may receive as much as a three-level decrease from his offense level.  Because Suellentrop's Combined Adjusted Offense Level, 53, exceeded the maximum offense level under the guidelines, 43, his acceptance of responsibility did not affect his sentencing range.  Suellentrop argues that his counsel was ineffective by failing to argue that three levels should be deducted from the maximum offense level of 43 rather than from his Adjusted Combined Offense Level of 56 so he could receive meaningful credit for his guilty plea.

Circuit courts have unanimously held that downward adjustments for acceptance of responsibility must be made from a defendant's offense level rather

than from the maximum offense level under the guidelines. *See United States v. Caceda*, 990 F.2d 707, 709-710 (2d Cir. 1993); *United States v. Wood*, 48 F.3d 530 (5th Cir. 1995); *United States v. Houser*, 70 F.3d 87, 91 (11th Cir. 1995); *United States v. Williams*, 380 F. App'x 527, 529 (7th Cir. 2010). Not only do the guidelines instruct the Court to apply the adjustment for the defendant's acceptance of responsibility before determining the applicable guideline range, U.S. Sent'g Guidelines Manual § 1B1.1(a), but also, the alternative would lead to perverse results. As the Second Circuit explained:

> We believe it evident that downward adjustments must be made from the total of the base offense level plus upward adjustments even if that total exceeds 43. Otherwise, a more culpable offender, say, a defendant whose conduct would yield a level of 50 who was entitled to a downward adjustment of 2, would receive a total offense level of 41, while a less culpable defendant with a level of 43 and no applicable upward or downward adjustments would get a higher sentence. We decline to read the Guidelines to compel that perverse result.

*Caceda*, 990 F.2d at 710. Although the Eighth Circuit has not explicitly adopted this reasoning, it has made clear that downward adjustments for acceptance of responsibility must be made from the total offense level, even if the result exceeds the maximum offense level under the guidelines. *See United States v. Jensen*, 834 F.3d 895, 902 (8th Cir. 2016) (failure to apply 3-level reduction for acceptance of responsibility to total offense level of 48 was harmless because the adjusted offense level would still be 43).

Because the deduction for acceptance of responsibility must be made from a defendant's total offense level, any contrary argument from Suellentrop's counsel would have been meritless.  Counsel is not ineffective for failing to raise meritless arguments.  *See Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).  I will accordingly deny Ground 6.

   B. Grounds 7 and 8

In Grounds 7 and 8, Suellentrop again challenges how his acceptance of responsibility affected his sentence.  In Ground 7, he cursorily argues that he "was deprived of . . . due process protections where counsel did not even try to address this issue."  (ECF 2 at p. 16.)  And in Ground 8, he argues that "failing to receive meaningful reduction of the sentencing guidelines credit for a plea with acceptance of responsibility is cruel and unusual punishment" under the Eighth Amendment. (*Id.*)

These claims are meritless.  Suellentrop does not explain how following the sentencing guidelines violates due process, nor how a sentence below the statutory maximum and the guidelines' range is cruel and unusual punishment.  *See United States v. Patten*, 664 F.3d 247, 252 (8th Cir. 2011) ("This Court has never held that a sentence within the statutory range violates the Eighth Amendment."); *United States v. Collins*, 340 F.3d 672, 679 (8th Cir. 2003) ("It is well settled that a

sentence within the range provided by statute is generally not reviewable by an appellate court.").

**Suellentrop Is Not Entitled to An Evidentiary Hearing**

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citations omitted). The record conclusively refutes Suellentrop's claims, so I will not hold an evidentiary hearing.

Accordingly,

**IT IS HEREBY ORDERED** that Dennis M. Suellentrop's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

A separate judgment in accord with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of July, 2023.

- 16 -